IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-93

 No. 418A20-1

 Filed 27 August 2021

 IN THE MATTER OF: A.P.W., A.J.W., H.K.W.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) and on writ of certiorari

 pursuant to N.C.G.S. § 7A-32(b) from orders entered on 4 March 2019 by Judge David

 V. Byrd and on 30 June 2020 by Judge Jeanie R. Houston in District Court, Wilkes

 County. This matter was calendared in the Supreme Court on 21 June 2021 but

 determined on the record and briefs without oral argument pursuant to Rule 30(f) of

 the North Carolina Rules of Appellate Procedure.

 Vannoy, Colvard, Triplett & Vannoy, P.L.L.C., by Daniel S. Johnson, for
 petitioner-appellee Wilkes County Department of Social Services.

 Michelle FormyDuval Lynch for appellee Guardian ad Litem.

 Parent Defender Wendy C. Sotolongo and Assistant Parent Defender J. Lee
 Gilliam for respondent-appellant father.

 Anné C. Wright for respondent-appellant mother.

 BERGER, Justice.

¶1 Respondent-mother and respondent-father appeal from the trial court’s orders

 terminating their parental rights in the minor children “Ava,” born on January 16,
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 2014, “Aiden,” born on June 16, 2012, and “Hunter,” born on February 14, 2011. 1 In

 an order entered on December 18, 2020, this Court also allowed respondents’ joint

 petition for writ of certiorari to review the trial court’s March 4, 2019 permanency

 planning order eliminating reunification from the children’s permanent plan. See

 N.C.G.S. § 7B-1001(a1)(2), (a2) (2019); see also N.C.R. App. P. 21(a)(1) (authorizing

 certiorari review “when the right to prosecute an appeal has been lost by failure to

 take timely action[.]”). We now affirm the trial court’s orders with regard to

 respondent-mother and respondent-father.

 I. Procedural History

¶2 On January 2, 2017, the Wilkes County Department of Social Services (DSS)

 received a child protective services (CPS) report stating that Ava, Aiden, and

 Hunter’s home lacked heat and running water and had holes in the floor. The same

 day, law enforcement came to the residence to investigate a reported robbery in which

 a man wearing a ski mask brandished a toy gun while attempting to steal medication

 belonging to a friend of respondent-mother. Officers found drug paraphernalia in the

 home, and two of the children identified respondent-father as the robber. Law

 enforcement reported finding used hypodermic needles in the home, raising “concerns

 about improper supervision and ongoing substance abuse.” DSS was notified that

 day that “mom and the children resided in a home with no running water or heat and

 1 We use these pseudonyms to protect the juveniles’ identities and for ease of reading.
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 holes in the f1oor.” In subsequent drug screens, respondent-mother tested positive

 for THC and benzodiazepine.2 Respondent-father tested positive for

 methamphetamine and benzodiazepine.

¶3 On January 3, 2017, DSS obtained nonsecure custody of the children and filed

 petitions alleging they were neglected juveniles under N.C.G.S. § 7B-101(15) (2019).

 Specifically, the petitions alleged that the children were neglected because they did

 not receive proper supervision from their parents and lived in an environment

 injurious to their welfare. Because of this, respondent-mother was asked to find

 appropriate housing for the family, and she subsequently moved in with the

 children’s paternal grandmother. Respondent-father “was asked to move out of the

 home due to inappropriate housing arrangements.”

¶4 After a hearing on February 6, 2017, the trial court entered an order

 adjudicating the children neglected. In lieu of written findings, the trial court found

 that respondents had stipulated to the facts stated in the court summary prepared

 by DSS and incorporated the document into the order by reference. According to the

 court summary, respondents’ CPS history began in 2013 when one child fell and hit

 his head while under respondent-mother’s care, though the case was closed because

 neglect was not substantiated. Then, in 2016, there were concerns of “substance

 2 Respondent-mother has a valid prescription for Xanax, a brand-name
 benzodiazepine.
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 abuse by the parents and improper care of the children.” Later that year, all three

 children underwent medical exams which showed medical or remedial neglect. Due

 to this, the family went into case management, and “[b]oth parents were

 substantiated on for improper medical/remedial care.”

¶5 Per a separate disposition order, legal and physical custody of the juveniles

 was to remain with DSS. The trial court granted respondents semi-monthly, one-

 hour periods of supervised visitation, “contingent upon clean drug screens.” The court

 ordered DSS to conduct a home study of the paternal grandmother.

¶6 Respondents each entered into a DSS case plan requiring them to provide DSS

 with a written statement of the reasons their children were placed in foster care.

 Further, both respondents had to obtain substance abuse assessments; complete

 parenting classes; obtain and maintain stable employment and appropriate housing;

 sign a voluntary support agreement requiring payment of timely child support; and

 attend regular visitation with the children, conditioned upon negative drug screens.

 Respondent-father was also required to complete anger management classes.

¶7 At the initial review hearing on June 5, 2017, the trial court found respondent-

 mother had “completed most of the requirements of her family service case plan[,]”

 including substance abuse treatment and parenting classes. Respondent-mother had

 signed a voluntary support agreement and had a “small child support arrearage.”

 She had submitted to random drug screens and regularly attended visitation with
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 the children. However, while DSS was unable to inspect the interior of respondent-

 mother’s home at that time, the exterior was found to be in poor condition.

 Respondent-father had “made practically no progress” on his case plan, and he was

 not attending visitations or maintaining regular contact with the social worker.

¶8 On December 4, 2017, the trial court held a permanency planning hearing and

 established a primary permanent plan of reunification with a concurrent plan of

 custody with a court-approved caretaker. At the time of the hearing, respondent-

 father was incarcerated for a probation violation and had made no child support

 payments despite entering into a voluntary support agreement. The trial court found

 that respondent-mother was unemployed and “behind in her child support[.]”

 Additionally, an inspection of respondent-mother’s home revealed that the condition

 of her residence was unclean, “very cluttered[,]” and “not appropriate at this time.”

 Respondent-mother was living with her boyfriend Thomas and their infant child. The

 trial court further found that Ava, Aiden, and Hunter had “indicated that they are

 afraid of [Thomas,]” and that respondent-mother had “advised the social worker that

 she will separate herself from [Thomas] if necessary to regain custody of her

 children.”

¶9 Following a review hearing on September 18, 2018, the trial court entered a

 permanency planning order on March 4, 2019. This order eliminated reunification

 and changed the primary plan to adoption with the secondary plan being custody with
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 an approved caretaker. The court relieved DSS of further reunification efforts while

 noting that “[e]ach parent, through counsel, preserves their right to appeal the

 Court’s decision to cease reunification efforts.” However, respondents failed to file

 written notice preserving their right to appeal the order eliminating reunification

 from the permanent plan, as required by N.C.G.S. § 7B-1001(a1)(2) which states

 (a1) In a juvenile matter . . . only the following final orders
 may be appealed directly to the Supreme Court:

 ....

 (2) An order eliminating reunification as a permanent plan
 under G.S. 7B-906.2(b), if all of the following conditions are
 satisfied:

 a. The right to appeal the order eliminating
 reunification has been preserved in writing within
 30 days of entry and service of the order.

 b. A motion or petition to terminate the parent’s
 rights is filed with 65 days of entry and service of the
 order eliminating reunification and both of the
 following occur:

 (1) The motion or petition to terminate rights
 is heard and granted.

 (2) The order terminating parental rights is
 appealed in a proper and timely manner.

 N.C.G.S. § 7B-1001(a1)(2) (2019).

¶ 10 DSS later filed petitions to terminate respondents’ parental rights in Ava,

 Aiden, and Hunter. On June 9, 2020, the trial court held a hearing on the petitions,
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 and on June 30, 2020, the trial court entered orders terminating respondents’

 parental rights.

¶ 11 In adjudicating grounds for termination, the trial court concluded respondents

 had: (1) neglected the children under N.C.G.S. § 7B-1111(a)(1); (2) willfully left the

 children in a placement outside the home for more than twelve months without

 making reasonable progress to correct the conditions that led to their removal under

 N.C.G.S. § 7B-1111(a)(2); and (3) willfully failed to pay a reasonable portion of the

 children’s cost of care in DSS custody under N.C.G.S. § 7B-1111(a)(3). With regard

 to respondent-mother, the trial court further concluded the children were dependent

 juveniles under N.C.G.S. § 7B-1111(a)(6), because she was incapable of providing

 proper care and supervision for the children and lacked an appropriate alternative

 childcare arrangement. The trial court then considered the dispositional factors in

 N.C.G.S. § 7B-1110(a) and determined it was in the children’s best interests that

 respondents’ parental rights be terminated.

¶ 12 Respondents filed notice of appeal from the termination orders. By an order

 entered on December 18, 2020, this Court allowed respondents’ joint petition for writ

 of certiorari to review the March 4, 2019, permanency planning order eliminating

 reunification from the permanent plan as part of their appeal.

 II. Order Eliminating Reunification from the Permanent Plan

¶ 13 Respondents contend the trial court erred when it eliminated reunification
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 from the children’s permanent plan in the March 4, 2019, permanency planning

 order. We disagree.

 A. Standard of review

¶ 14 This Court’s review of a permanency planning review order
 “is limited to whether there is competent evidence in the
 record to support the findings [of fact] and whether the
 findings support the conclusions of law.” The trial court’s
 findings of fact are conclusive on appeal if supported by any
 competent evidence.”

 In re H.A.J., 377 N.C. 43, 2021-NCSC-26, ¶ 14 (quoting In re L.M.T., 367 N.C. 165,

 168, 752 S.E.2d 453, 455 (2013)). Uncontested findings are binding on appeal. Id.

 ¶ 15.

¶ 15 The trial court’s dispositional choices—including the decision to eliminate

 reunification from the permanent plan—are reviewed for abuse of discretion. In re

 J.H., 373 N.C. 264, 267–68, 837 S.E.2d 847, 850 (2020). “An abuse of discretion occurs

 when the trial court’s ruling is so arbitrary that it could not have been the result of a

 reasoned decision.” Id. at 268, 837 S.E.2d at 850.

¶ 16 When this Court reviews an order eliminating reunification from the

 permanent plan with an order terminating parental rights, “we consider both orders

 together” as provided in N.C.G.S. § 7B-1001(a2). In re L.M.T., 367 N.C. 165, 170, 752

 S.E.2d 453, 457 (2013). Therefore, “incomplete findings of fact in the cease
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 reunification order may be cured by findings of fact in the termination order.”3 Id.

¶ 17 As an initial matter, we note the record on appeal does not include a transcript

 of the September 18, 2018, permanency planning hearing or a narrative of the

 hearing testimony. See N.C R. App. P. 9(a)(1)(e) (stating that the record on appeal

 shall contain information “necessary for an understanding of all issues presented on

 appeal.”) Because respondents have failed to include a narration of the evidence, or

 a transcript of the trial court proceedings with the record, we presume the findings

 made by the trial court are supported by competent evidence. See Summerlin v.

 Carolina & N.W. Ry. Co., 133 N.C. 550, 557, 45 S.E. 898, 901 (1903) (deciding that it

 is the responsibility of the appellant to assemble the record in such a way as to show

 error, otherwise the Court cannot presume error.); see also In re A.R.H.B., 186 N.C.

 App. 211, 219, 651 S.E.2d 247, 253 (2007), appeal dismissed, 362 N.C. 235, 659 S.E.2d

 433 (2008) (finding that in the absence of a transcript “[t]he longstanding rule is that

 there is a presumption in favor of regularity and correctness in proceedings in the

 trial court, with the burden on the appellant to show error.” (citation and quotation

 3 At the time of our decision in In re L.M.T., the parent’s right to appeal from a
 permanency planning order was triggered by the trial court’s ceasing of reunification efforts,
 rather than its elimination of reunification from the permanent plan as in current N.C.G.S.
 §§ 7B-1001(a)(5) and (a1)(2) (2019). In re L.M.T., 367 N.C. at 167–70, 752 S.E.2d at 455–57
 (discussing former N.C.G.S. §§ 7B-507(b)(1) and 7B-1001(a)(5) (2011)). Section 7B-906.2 now
 directs the trial court to “order the county department of social services to make efforts
 toward finalizing the primary and secondary permanent plans” until permanence is achieved.
 N.C.G.S. § 7B-906.2(b). The elimination of reunification from the permanent plan thus
 implicitly relieves the department of its duty to undertake reunification efforts pursuant to
 N.C.G.S. § 7B-906.2(b).
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 marks omitted)). To the extent respondents challenge any of the findings in the

 March 4, 2019, permanency planning order on evidentiary grounds, those challenges

 cannot succeed.

 B. Sufficiency of findings

¶ 18 Respondent-mother contends the permanency planning order lacks the

 findings required by N.C.G.S. § 7B-906.1(d)(3) (2019) and N.C.G.S. § 7B-906.2(b)

 (2019) to eliminate reunification from the children’s permanent plan.

¶ 19 Subdivision 7B-906.1(d)(3) applies at all review and permanency planning

 hearings following an adjudication of abuse, neglect, or dependency. This statute

 requires the trial court to “make written findings regarding . . . [w]hether efforts to

 reunite the juvenile with either parent clearly would be unsuccessful or inconsistent

 with the juvenile’s health or safety and need for a safe, permanent home within a

 reasonable period of time.”4 N.C.G.S. § 7B-906.1(d)(3).

¶ 20 Subsection 7B-906.2(b) provides, in pertinent part, that reunification shall

 remain a part of the juvenile’s permanent plan unless the trial court “made findings

 under . . . G.S. 7B-906.1(d)(3) . . . or the court makes written findings that

 4 Subsection 7B-906.1(d) includes seven subdivisions and provides that, “the court

 shall consider the following criteria and make written findings regarding those that are
 relevant[.]” N.C.G.S. § 7B-906.1(d). This Court has construed virtually identical language in
 N.C.G.S. 7B-1110(a) (2019)—which governs the dispositional stage of a termination of
 parental rights proceeding—“to require written findings only as to those factors for which
 there is conflicting evidence.” In re E.F., 375 N.C. 88, 91, 846 S.E.2d 630, 633 (2020) (citing
 In re A.R.A., 373 N.C. 190, 199, 835 S.E.2d 417, 424 (2019)).
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 reunification efforts clearly would be unsuccessful or would be inconsistent with the

 juvenile’s health or safety.”5 N.C.G.S. § 7B-906.2(b). “The trial court’s written

 findings must address the statute’s concerns but need not quote its exact language.”

 In re L.M.T., 367 N.C. at 168, 752 S.E.2d at 455 (interpreting former N.C.G.S. § 7B-

 507(b)(1) (2011)).

¶ 21 The trial court made the following findings with regard to respondent-mother’s

 progress and prospects for reunification:

 5. The mother signed her case plan on February 27,
 2017. She completed some of the items of her case plan.
 She completed substance abuse classes, parenting classes,
 and signed a voluntary support agreement. The mother
 has made a few child support payments. She has a child
 support arrearage in excess of $2,000.00. The mother’s
 employment status is unclear. She has reported work at
 Lydall, Van Heusen, the Candle Company, and Tyson.

 6. The condition of the mother’s home has been a
 concern throughout the pendency of these cases. Each time
 the mother has moved she has failed to keep a suitable and
 clean residence.

 7. The mother has lived with her boyfriend, Thomas
 . . ., throughout the pendency of these cases. The children
 have consistently indicated that they are afraid of
 [Thomas] and they have described, in detail, incidents of
 domestic violence perpetrated by [Thomas] against their
 mother. [Thomas] signed a case plan; however, he did not
 complete the plan with the exception of taking a few
 random drug screens.

 5 Subsection 7B-906.2(b) also allows the trial court to exclude reunification from the

 permanent plan if “the court made findings under G.S. 7B-901(c) or G.S. 7B-906.1(d)(3), [or]
 the permanent plan is or has been achieved . . . .” N.C.G.S. § 7B-906.2(b).
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

....

9 Both parents have been allowed supervised
visitation, twice monthly for one hour, contingent on
passing drug screens. The mother missed visits from April
through July 2018. The mother’s visits have been
appropriate and she has done well with the children during
her visits. . . .

10. The mother was ordered to undergo a psychological
evaluation with Nancy Sizemore, MA, LPA. Ms. Sizemore
submitted her report in August 2018. She diagnosed the
mother with the following conditions:

  Borderline intelligence
  Attention deficit hyperactivity disorder
 (“ADHD”)
  Generalized anxiety disorder
  Paranoid personality disorder
  Mild neurocognitive disorder

11. Ms. Sizemore opined that and the court finds the
mother does not appear able to make appropriate decisions
in the best interests of the children and reunification is not
likely to be in the best interest of the children. The mother
does not appear to learn from past mistakes and blames
others for her situation. She does not appear capable to
make the necessary changes in her life to provide a safe
and secure environment for the children.

12. There are no appropriate relative placements for the
children. . . .

13. It is not possible for the children to be returned to
the home of a parent immediately or within the next six
months and it would be contrary to the children’s health
and safety and their general welfare to be returned to the
home of a parent. The parents have not completed their
case plans. The mother is unable to appropriately parent
the children. The mother has not separated herself from
Thomas. . . . Neither parent has demonstrated such
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 stability which would warrant the children being returned
 to their care. As a result, the Court finds that the
 permanent plan should be changed from reunification to a
 primary permanent plan of adoption and a secondary plan
 of custody with an approved caretaker. DSS should be
 relieved of any further obligation to attempt to reunify the
 children with a parent.

¶ 22 We find no merit to respondent-mother’s argument. Although the trial court

 did not use the precise language of N.C.G.S. §§ 7B-906.1(d)(3) and -906.2(b) in its

 findings, the court addressed the substance of both statutes’ concerns. See In re

 L.M.T., 367 N.C. at 168, 752 S.E.2d at 455 (“The trial court's written findings must

 address the statute's concerns, but need not quote its exact language.”). The trial

 court also found sufficient evidentiary facts that demonstrate the basis for its findings

 of fact: “[i]t is not possible for the children to be returned to the home of a parent

 immediately or within the next six months and it would be contrary to the children’s

 health and safety and their general welfare to be returned to the home of a parent.”

 (emphasis added). Specifically, the trial court cited respondent-mother’s failure to

 obtain stable and appropriate housing or employment, her continued cohabitation

 with Thomas despite the children’s detailed accounts of his domestic violence against

 her, the unfavorable results of her psychological evaluation, and her apparent

 inability “to learn from past mistakes and . . . make the necessary changes in her life

 to provide a safe and secure environment for the children.”

¶ 23 Respondent-mother insists the evidence and the trial court’s findings show
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 that “[r]eunification efforts between Ava, Aiden, Hunter and their mother would not

 have been clearly unsuccessful,” given her progress in completing some components

 of her case plan. As explained above, however, the trial court’s findings of fact support

 its conclusion of law that reunification with either parent would be “contrary to the

 children’s health and safety[.]” Accordingly, we affirm the order eliminating

 reunification from the permanent plan as to respondent-mother.

¶ 24 Respondent-father claims the trial court failed to make sufficient findings to

 comply with N.C.G.S. § 7B-906.2(d)(1)–(4) (2019) in eliminating reunification from

 the children’s permanent plan. Subsection 7B-906.2(d) requires the trial court to

 make written findings as to each of the following, which
 shall demonstrate the [parent’s] degree of success or failure
 toward reunification:

 (1) Whether the parent is making adequate progress
 within a reasonable period of time under the plan.

 (2) Whether the parent is actively participating in or
 cooperating with the plan, the department, and the
 guardian ad litem for the juvenile.

 (3) Whether the parent remains available to the court,
 the department, and the guardian ad litem for the
 juvenile.

 (4) Whether the parent is acting in a manner
 inconsistent with the health or safety of the juvenile.

 N.C.G.S. § 7B-906.2(d)(1)–(4). While the findings need not track the statutory

 language, they “must make clear that the trial court considered the evidence in light

 of whether reunification would be futile or would be inconsistent with the juvenile’s
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 health, safety, and need for a safe, permanent home within a reasonable period of

 time.” In re L.E.W., 375 N.C. 124, 129–30, 846 S.E.2d 460, 465 (2020). Moreover, as

 previously noted, “incomplete findings of fact in the cease reunification order may be

 cured by findings of fact in the termination order.” In re L.M.T., 367 N.C. at 170, 752

 S.E.2d at 457.

¶ 25 Here, the permanency planning order includes the following findings

 regarding respondent-father’s progress and prospects for reunification:

 8. The father signed a case plan on April 6, 2017. He
 has been in and out of prison and treatment for substance
 abuse. As a result of his incarceration and treatment the
 father has only had three visits with the children since they
 have been in DSS custody. He signed a voluntary support
 agreement and has a child support arrearage in excess of
 $5,000.00

 9. Both parents have been allowed supervised
 visitation, twice monthly for one hour, contingent on
 passing drug screens. . . . As noted above, the father has
 only had three visits with the children during the time that
 they have been in DSS custody.

 ....

 12. There are no appropriate relative placements for the
 children. . . .

 13. It is not possible for the children to be returned to
 the home of a parent immediately or within the next six
 months and it would be contrary to the children’s health
 and safety and their general welfare to be returned to the
 home of a parent. The parents have not completed their
 case plans. . . . Neither parent has demonstrated such
 stability which would warrant the children being returned
 to their care. As a result, the Court finds that the
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 permanent plan should be changed from reunification to a
 primary permanent plan of adoption and a secondary plan
 of custody with an approved caretaker. DSS should be
 relieved of any further obligation to attempt to reunify the
 children with a parent.

¶ 26 In its three orders terminating respondents’ parental rights, the trial court

 listed the requirements of respondent-father’s case plan and made the following

 additional findings regarding the N.C.G.S. § 7B-906.2(d) criteria:6

 25. The Respondent-Father was incarcerated from
 November 2017 until January 2018.

 26. The Respondent-Father failed to complete his anger
 management assessment.

 27. The Respondent-Father signed a voluntary support
 agreement in 2017 to pay child support in the amount of
 $295.00 per month. . . . At the time of the termination
 hearing, [he] had a child support arrearage of
 approximately $10,000.00.

 ....

 29. The Respondent-Father participated in a substance
 abuse assessment and went through an inpatient
 treatment program in the DART program.

 30. The Respondent-Father suffered a substance abuse
 relapse in September 2019. On September 23, 2019, the
 Respondent-Father was ordered to submit a drug screen by
 the Court. This drug screen was positive for
 methamphetamine.

 31. The Respondent-Father has not consistently

 6 The trial court entered a separate termination order for Ava, Aiden, and Hunter.

 The three orders contain virtually identical findings of fact and conclusions of law, altered
 only to account for the name, age, and sex of the child at issue.
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 submitted himself for drug screening requested by DSS.
 He was asked to submit to forty-one (41) drug screens but
 only took twelve (12) during the pendency of the underlying
 juvenile action.

 32. The Respondent-Father also refused to take some
 drug screens. . . .

 33. The Respondent-Father has not consistently
 participated in visitation with the minor child[ren].
 During the pendency of the underlying juvenile action, the
 Respondent-Father could have participated in forty (40)
 supervised visits with the child[ren] but only had five (5)
 visits.

 34. The Respondent-Father did not complete parenting
 classes.

 ....

 45. . . . Neither parent made any appreciable progress in
 their case plan. Neither Respondent has shown that they
 could serve as a responsible custodian for the child.
 Neither parent has maintained stable and appropriate
 housing.

 As respondent-father does not contest any of these findings, they are binding on

 appeal.

¶ 27 Respondent-father first contends that the trial court’s bare finding that he

 “ha[d] not completed” his case plan at the time of the permanency planning hearing

 is insufficient to address the criteria required by N.C.G.S. § 7B-906.2(d)(1). However,

 the trial court made additional findings that satisfy N.C.G.S. § 7B-906.2(d)(1).

 Specifically, the trial court found that respondent-father: had been “in and out of

 prison and treatment for substance abuse” since signing his case plan on April 6,
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 2017; had visited the children just three times in the twenty months since they

 entered DSS custody; had accumulated “a child support arrearage in excess of

 $5,000.00”; and had not “demonstrated such stability which would warrant the

 children being returned to [his] care.” Additional findings in the termination orders

 include that, although he obtained a substance abuse assessment and attended

 inpatient treatment through the DART program, respondent-father: failed to

 complete an anger management assessment or parenting classes; failed to secure

 stable housing; attended fewer than one-third of the drug screens requested by DSS

 and refused to submit to other screens; and made no “appreciable progress” on his

 case plan even at the time of the termination hearing in June 2020. See generally In

 re L.M.T., 367 N.C. at 170, 752 S.E.2d at 457 (concluding that “incomplete findings

 of fact in the cease reunification order may be cured by findings of fact in the

 termination order”). Accordingly, these findings more than satisfy the requirements

 of N.C.G.S. § 7B-906.1(d)(1).

¶ 28 Respondent-father further asserts the trial court made “no findings”

 addressing the remaining criteria in N.C.G.S. § 7B-906.2(d)(2)–(4). We disagree.

¶ 29 While not utilizing the statutory language, the trial court’s findings “address

 the necessary statutory factors by showing that the trial court considered the

 evidence in light of whether reunification would be futile or would be inconsistent

 with the juvenile’s health, safety, and need for a safe, permanent home within a
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 reasonable period of time[.]” In re H.A.J., 377 N.C. 43, 2021-NCSC-26, ¶ 16 (cleaned

 up). The findings depict respondent-father’s minimal degree of engagement with his

 case plan and cooperation with DSS, specifically with DSS’s requests for drug screens.

 In addition to noting respondent-father’s attendance at the hearing, the trial court

 found respondent-father had been “in and out of prison,” undergone “treatment for

 substance abuse,” and “ha[d] not consistently submitted himself for drug screening

 requested by DSS[.]” These findings reflected respondent-father’s less-than-

 consistent availability to the court and DSS.

¶ 30 With regard to N.C.G.S. § 7B-906.2(d)(4), the trial court found that respondent-

 father was incarcerated from November 2017 to January 2018; that he failed to

 address the anger management and parenting skills components of his case plan; that

 he either failed to attend or refused to participate in most of the requested drug

 screens requested by DSS; that he failed to obtain stable housing; and that “it would

 be contrary to the children’s health and safety and their general welfare to be

 returned to” his care. Therefore, the trial court addressed the purpose of N.C.G.S.

 §7B-906.2(d)(4).

¶ 31 Respondent-father next argues the trial court failed to make the conclusions of

 law required by N.C.G.S. § 7B-906.2(b)—i.e., “that reunification efforts clearly would

 be unsuccessful or would be inconsistent with the juvenile[s’] health or safety.”

 However, the trial court satisfied the substance of N.C.G.S. § 7B-906.2(b) by finding
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 that “[i]t is not possible for the children to be returned to the home of a parent or

 within the next six months and it would be contrary to the children’s health and safety

 and their general welfare to be returned to the home of a parent.” (emphasis added).

 See In re L.M.T., 367 N.C. at 169, 752 S.E.2d at 456 (holding that “[w]hile [the]

 findings of fact do not quote the precise language [the statute], the order embraces

 the substance of the statutory provisions requiring findings of fact that further

 reunification efforts “would be futile” or “would be inconsistent with the juvenile's

 health, safety, and need for a safe, permanent home within a reasonable period of

 time.”).

¶ 32 To the extent respondent-father separately contends the trial court’s

 evidentiary findings focus solely on his “completion of a case plan” and, therefore, do

 not support its findings of fact under N.C.G.S. § 7B-906.2(b), we conclude the court’s

 findings adequately explain the basis for its determination that there were no

 realistic prospects for reunification. At the time of the permanency planning hearing,

 the children had been in DSS custody for more than twenty months, and respondent-

 father had been afforded more than nineteen months to remedy the conditions

 leading to their adjudication as neglected in February 2017. Respondent-father

 continued to engage in activities resulting in his incarceration,7 repeatedly refused to

 7 Although respondents have not provided this Court with a transcript of the
 permanency planning hearing, the record suggests respondent-father had been incarcerated
 for violating his probation.
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 submit to drugs screens, and had made no meaningful effort to engage with his case

 plan by attaining personal stability or providing support for the children. These facts

 fully support a determination that returning the children to respondent-father at any

 time in the foreseeable future would be contrary to their health, safety, and general

 welfare. See In re L.R.L.B., 377 N.C. 311, 2021-NCSC-49 ¶ 25 (stating that the “trial

 court thus made the finding required by N.C.G.S. § 7B-906.2(b) to eliminate

 reunification from the permanent plan” by finding “[t]hat further reasonable efforts

 to prevent or eliminate the need for placement of the juvenile are clearly futile or

 inconsistent with the juvenile’s need for a safe, permanent home within a reasonable

 period of time.”).

¶ 33 Finally, respondent-father claims the trial court failed to make the findings

 required by N.C.G.S. § 7B-906.2(c) (2019), which provides:

 (c) Unless reunification efforts were previously ceased, at
 each permanency planning hearing the court shall make a
 finding about whether the reunification efforts of the
 county department of social services were reasonable. In
 every subsequent permanency planning hearing held
 pursuant to G.S. 7B-906.1, the court shall make written
 findings about the efforts the county department of social
 services has made toward the primary permanent plan and
 any secondary permanent plans in effect prior to the
 hearing. The court shall make a conclusion about whether
 efforts to finalize the permanent plan were reasonable to
 timely achieve permanence for the juvenile.

¶ 34 The trial court’s orders refer to DSS’s efforts with respondent-father, DSS’s

 consideration of relative placements for the children, visitations by respondent-
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

father, and the voluntary support agreement entered with DSS. The termination

order includes additional findings of fact detailing DSS’s efforts, including efforts

relating to the development and implementation of a case plan tailored to assist

respondent-father and respondent-mother in correcting the conditions that led to

Ava, Aiden, and Hunter’s removal in order to facilitate reunification; home

inspections of respondent-mother’s residence; offering respondent-mother’s boyfriend

the opportunity to participate in a case plan; requests for drug screens offering forty

supervised visitations for respondent-father; providing transportation for supervised

visitations for respondent-father; and attempts to and verification of respondent-

father’s reported residences. The orders which detail the efforts made by DSS to

reunify the children with respondent-father, in addition to other findings related to

efforts with respondent-mother, include “written findings about the efforts the county

department of social services has made toward the primary permanent plan and any

secondary permanent plans in effect prior to the hearing,” N.C.G.S. § 7B-906.2(c).8

 8 The trial court’s findings also state that a written report submitted by the DSS social

worker is “incorporated herein as Findings of Fact.” However, that report is not included in
the record on appeal. Although the document’s absence does not affect our ruling here as the
trial court made the necessary findings of fact as to DSS’s efforts, we reiterate the appellant’s
burden of assembling a record on appeal that affirmatively demonstrates the errors asserted
in the appeal.
 As the trial court may consider such materials as the written report submitted by a
DSS social worker at a permanency planning hearing, this report likely set forth additional
details concerning DSS’s efforts that the trial court found relevant. See N.C.G.S. § 7B-906.1(c)
(2019) (“The court may consider any evidence, including hearsay evidence as defined in G.S.
8C-1, Rule 801, or testimony or evidence from any person that is not a party, that the court
finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 While the trial court’s orders lack an express finding using the term “reasonable” or

 “reasonableness” regarding DSS’s efforts, this Court has recognized that in regard to

 other statutory requirements for findings in a trial court order, “[t]he trial court’s

 written findings must address the statute’s concerns, but need not quote its exact

 language.” In re L.M.T., 367 N.C. at 168, 752 S.E.2d at 455 (addressing sufficiency of

 findings to satisfy former N.C.G.S. § 7B-507(b)(1) (2011)); see also In re H.A.J., 377

 N.C. 43, 2021-NCSC-26, ¶ 16 (addressing sufficiency of findings to satisfy N.C.G.S.

 § 7B-906.2(d)). We conclude that the trial court’s findings of fact address the statutory

 concern of N.C.G.S. § 7B-906.2(c).

¶ 35 Our conclusion is further supported by the failure of respondent-father to

 identify how DSS’s efforts for reunification were not reasonable. Respondent-father

 claims that “the efforts of DSS toward reunification were not reasonable, particularly

 with unreasonable limits on the children’s time with respondent-father,” but we find

 no merit to his complaint. Pursuant to N.C.G.S. § 7B-905.1, it is the trial court’s duty

 to “provide for visitation that is in the best interests of the juvenile consistent with

 the juvenile’s health and safety, including no visitation.” N.C.G.S. § 7B-905.1(a)

 (2019). It was not DSS, but the trial court that made respondents’ visitation with the

 children “contingent upon clean drug screens” as part of its initial “Juvenile

 most appropriate disposition.”). To the extent the report was submitted to the trial court and
 is germane to his appeal, it was incumbent upon respondent-father to make it a part of the
 appellate record.
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 Disposition Order” entered on February 14, 2017. The trial court maintained this

 condition in each subsequent order. Whatever actions DSS must undertake to meet

 the “reasonable efforts” standard, it is not obliged to defy the trial court’s orders. It

 was also the trial court that established that DSS was not “required to provide visits

 to any incarcerated parent[,]” and significantly, there is no indication that

 respondent-father requested visitation with the children while incarcerated and only

 exercised five out of forty supervised visitations offered by DSS. Accordingly, we

 reject respondent-father’s assignment of error by the trial court or DSS.

 III. Orders Terminating Respondents’ Parental Rights

¶ 36 Respondent-mother contends the trial court erred in adjudicating the existence

 of grounds for the termination of her parental rights under N.C.G.S. § 7B-1111(a).

 Respondent-father does not raise any claims of error with regard to the termination

 orders.

 A. Standard of Review

¶ 37 Under this Court’s well-established standard of review,

 we review a trial court’s adjudication of grounds to
 terminate parental rights to determine whether the
 findings are supported by clear, cogent and convincing
 evidence and the findings support the conclusions of law.
 Findings of fact not challenged by respondent are deemed
 supported by competent evidence and are binding on
 appeal. The trial court’s conclusions of law are reviewable
 de novo on appeal.

 In re B.T.J., 377 N.C. 18, 2021-NCSC-23, ¶9 (cleaned up). This Court has also held
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 that “an adjudication of any single ground for terminating a parent’s rights under

 N.C.G.S. § 7B-1111(a) will suffice to support a termination order. Therefore, if this

 Court upholds the trial court’s order in which it concludes that a particular ground

 for termination exists, then we need not review any remaining grounds.” In re S.R.F.,

 376 N.C. 647, 2021-NCSC-5 ¶ 9 (quoting In re J.S., 374 N.C. 811, 815, 845 S.E.2d 66,

 71 (2020)).

¶ 38 We will address the trial court’s adjudication that respondent-mother willfully

 failed to pay a reasonable portion of the children’s cost of care under N.C.G.S. § 7B-

 1111(a)(3). Under this provision, the trial court may terminate the rights of a parent

 whose child is in DSS custody if “the parent has for a continuous period of six months

 immediately preceding the filing of the petition or motion willfully failed to pay a

 reasonable portion of the cost of care for the juvenile although physically and

 financially able to do so.” N.C.G.S. § 7B-1111(a)(3). The determinative six-month

 period in this case is October 23, 2018, to April 23, 2019, the day DSS filed its

 petitions to terminate respondents’ parental rights.

¶ 39 The trial court made the following findings of fact pertinent to its adjudication

 under N.C.G.S. § 7B-1111(a)(3) and to respondent-mother’s arguments on appeal:

 3. From the preliminary hearing held before the trial
 of this action, the petitioner presents the following issues
 for adjudication:

 ....
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 c. The minor children have been in the care and
 custody of DSS for a continuous period of six (6)
 months or more next preceding the filing of these
 petitions. During this period, the Respondents have
 willfully failed to pay a reasonable portion of the
 costs of care for the minor children, although each of
 the parents has been physically and financially able
 to do so N.C.G.S. § 7B-1111(a)(3);

 ....

....

6. The minor children have been in the legal and
physical custody of DSS at all times since January 10,
2017.

....

21. The Respondent-Mother does not have a valid
driver’s license and relies on her mother and Thomas . . .
for transportation.

....

23. The Respondent-Mother has not maintained stable
employment. At the time of the termination hearing, she
was unemployed. The Respondent-Mother has reported
past work at Sonic restaurant and Lydall Manufacturing.
She has also reported work as a babysitter.

24. The Respondent-Mother signed a voluntary support
agreement to pay child support for all of her children in the
amount of $112.00 per month. The Respondent-Mother has
failed to consistently pay child support and currently has a
child support arrearage of $3,953.00. The Respondent-
Mother’s last child support payment was made on October
15, 2018.

....

38. DSS has expended significant funds providing for
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 the cost of care for the minor children since they have been
 in care. DSS has expended the sum of $1,564.00 per month
 per child since the children have been in custody beginning
 in January 2017.

 39. The Respondents have failed to pay a reasonable
 portion of the cost of care for the minor children. Each of
 the Respondents has had the physical ability to engage in
 employment and to provide support for the minor child.

 ....

 46. Each Respondent has willfully failed to pay a
 reasonable portion of the cost of care for the minor children
 while they have been in the care and custody of DSS.

¶ 40 Based on these findings, the trial court concluded as follows:

 2. The Petitioner has proven the following statutory
 grounds for terminating the Respondent-Mother’s parental
 rights by clear, cogent, and convincing evidence:

 ....

 c. The Respondent-Mother has willfully failed to
 pay a reasonable portion of the cost of care for the
 juveniles, although she has had the ability to do so,
 while the children have been in the custody of DSS
 N.C.G.S. § 7B-1111(a)(3).

¶ 41 Respondent-mother challenges the trial court’s finding that her nonpayment

 of support was willful in Finding of Fact 46 and Conclusion of Law 2(c). “The

 willfulness of a parent’s actions is a question of fact for the trial court.” In re K.N.K.,

 374 N.C. 50, 53, 839 S.E.2d 735, 738 (2020).

¶ 42 Respondent-mother acknowledges having paid nothing toward the children’s

 cost of care during the six months at issue. However, she contends the trial court’s
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 order fails to support a finding of willfulness because “there are no findings that

 address [her] income, employment, or capacity for the same during the six-month

 period relevant to [N.C.G.S. §] 7B-1111(a)(3).” We disagree.

¶ 43 “A parent is required to pay that portion of the cost of foster care for the child

 that is fair, just and equitable based upon the parent’s ability or means to pay.” In re

 S.E., 373 N.C. 360, 366, 838 S.E.2d 328, 332 (2020) (quoting In re Clark, 303 N.C.

 592, 604, 281 S.E.2d 47, 55 (1981)). Here, the parents signed a voluntary support

 agreement. A voluntary support agreement has “the same force and effect as an order

 of support entered by that court, and shall be enforceable and subject to modification

 in the same manner as is provided by law for orders of the court in such cases.”

 N.C.G.S. § 110-132(a3) (2019).

¶ 44 The evidence and the trial court’s findings show respondent-mother paid

 nothing toward the children’s cost of care during the six-month period immediately

 preceding DSS’s filing of the petitions to terminate her parental rights, despite

 having agreed to pay $112.00 per month in support and having demonstrated an

 ability to work by multiple reported periods of employment. Respondent-mother

 never moved to modify or nullify the voluntary agreement, and she was thus subject

 to a valid order “that established her ability to financially support for her children.”

 In re J.M., 373 N.C. 352, 359, 838 S.E.2d 173, 178 (2020).

¶ 45 Accordingly, we hold the trial court did not err in finding respondent-mother’s
 IN RE A.P.W., A.J.W., H.K.W.

 2021-NCSC-93

 Opinion of the Court

 nonpayment to be willful and in concluding that grounds existed to terminate her

 parental rights under N.C.G.S. § 7B-1111(a)(3). Therefore, we need not review the

 court’s additional grounds for termination under N.C.G.S. § 7B-1111(a)(1), (2), and

 (6).

¶ 46 Respondent-mother does not separately challenge the trial court’s conclusion

 at the dispositional stage of the termination proceeding that terminating her parental

 rights is in the children’s best interests. Accordingly, we affirm the termination

 orders as to respondent-mother.

 IV. Conclusion

¶ 47 In both respondent-mother’s and respondent-father’s appeal, we affirm the

 trial court’s order eliminating reunification from the permanent plan and the orders

 terminating their parental rights in Ava, Aiden, and Hunter.

 AFFIRMED.